Precious Metals Developing Co., Inc. v. Commissioner.
Precious Metals Developing Co. v. Commissioner
Docket No. 54976.
United States Tax Court
T.C. Memo 1956-230; 1956 Tax Ct. Memo LEXIS 65; 15 T.C.M. (CCH) 1200; T.C.M. (RIA) 56230; October 15, 1956
*65 The petitioner, a corporation, owned a patent which dealt with making silver articles tarnish resistant by coating them with rhodium and/or palladium. It had no employees. One of the petitioner's principal stockholders, Baker & Co., Inc., licensed jewelers to "rhodanize" silver articles. The jewelers paid Baker a royalty and in most cases also agreed to purchase all of their rhodium and palladium needs from it. Baker made payments to the petitioner of 4 per cent of its sales of rhodium and palladium. Held: 1. The petitioner has not shown that the payments it received from Baker were not royalties as determined by the Commissioner and thus personal holding company income. 2. The petitioner's failure to file personal holding company returns was not due to reasonable cause and was due to willful neglect. Karl Huber, Esq. *66 , 113 Astor Street, Newark, N.J., and G. Nicholas Venezia, Esq., for the petitioner. William F. Fallon, Esq., for the respondent. TIETJENS
Memorandum Findings of Fact and Opinion The respondent determined deficiencies in personal holding company surtax and additions to tax against the petitioner as follows: Personal Holding
Addition
Year
Company Surtax
to Tax
1934
$1,081.50
$270.38
1936
754.54
188.63
1941
1,087.05
271.76
1942
1,554.71
388.68
1943
3,084.40
771.10
1944
584.98
146.25
1945
1,207.22
301.81
1946
1,364.32
341.08
1947
714.17
178.54
1948
781.28
195.32
1949
320.51
80.13 The only issues for decision in this case are: 1, whether certain amounts received by the petitioner were royalties, and thus personal holding company income, as determined by the respondent, or were commissions as contended by the petitioner; and 2, whether the petitioner's failure to file personal holding company returns was due to reasonable cause and was not due to willful neglect. Findings of Fact Some of the facts are stipulated. They are found as stipulated and are incorporated herein by this reference. The petitioner, Precious *67 Metals Developing Co., Inc., was a corporation, incorporated under the laws of New Jersey in 1928. It was dissolved on April 1, 1954. During the years involved herein, the petitioner filed its corporate income, excess profits, and declared value excess profits tax returns with the collector of internal revenue at Newark, New Jersey. The returns were filed on an accrual basis. The petitioner did not file personal holding company returns for any of the taxable years. The petitioner's stock during the years in question was held by two corporations, Baker & Co., Inc. (hereinafter referred to as Baker) and The American Platinum Works, to the extent of two-thirds and one-third, respectively. During the same years approximately 90 per cent of the capital stock of Baker was owned by Charles Englehard, (now deceased) and his family. Englehard and Baker also owned approximately 30 per cent and 40 per cent, respectively of the outstanding stock of The American Platinum Works. The remaining 30 per cent of The American Platinum Works stock was held by German interests from 1934 to 1941; by the Alien Property Custodian from 1941 to 1946; and by Baker from 1946 on. During the taxable years *68 Englehard owned either directly or indirectly more than 50 per cent in value of the outstanding stock of the petitioner. The petitioner was originally formed as a sales corporation. However, prior to 1934, an arrangement was made with Baker whereby the latter would handle the sales of rhodium and palladium plating salts and solutions and the petitioner would participate in the net sales of Baker of such salts and solutions to the extent of 8 per cent of the sales. This paricipation was shortly thereafter reduced to 4 per cent. The petitioner had no employees from some time in 1929 until it was dissolved on April 1, 1954. During the years involved, the petitioner held record title to the following patents which had been assigned to it by their inventor: Patent No.
Title
Date Patented
1,837,193
Method of Electro-de-
Dec. 22, 1931
positing Precious
Metals and Apparatus
for Practicing the
Same.
1,947,180
Tarnish Resisting Silver
Feb. 13, 1934
The patent, numbered 1,947,180, contained the following five claims: "1. An article having a tarnishable metal body, a coating of a tarnish-resisting, substantially whit [with] metal over the body metal, *69 and an outer coating of rhodium. "2. A silver article having thereon successive electro-deposited coatings of nickel and rhodium. "3. A silver article having thereon successive electro-deposited coating of nickel, palladium and rhodium. "4. A silver article having electro-deposited thereon a coating of palladium beneath which is electro-deposited upon the silver a layer of a metal to check alloying with the silver. "5. An article set forth in claim 4, having a layer of rhodium electro-deposited upon the palladium." On May 31, 1934, Baker entered into an agreement with Sigmund Cohn which stated the following: "License Agreement entered into on the thirty-first day of May 1934, by and between BAKER & COMPANY, INC., a corporation of the State of New Jersey, hereinafter referred to as 'The Licensor' and the firm of SIGMUND COHN of the city of New York, hereinafter referred to as 'The Licensee,' "WHEREAS, the Licensor has developed certain processes and has made certain inventions relating to the electro-deposition of rhodium and is the owner of United States patents 1,949,131 - 1,947,180 - 1,779,457 - 1,779,438 and Canadian Patents 340,067 - 321,912 - 305,841 - 305,840, as *70 well as other pending applications for both United States Letters Patent and Canadian Letters Patent pertaining to rhodium plating, and "WHEREAS, the Licensee has also contributed to the development of rhodium plating, certain phases of which are disclosed in his application for United States Letters Patent which the Patent Office of the United States has declared in interference with one of the pending applications of the Licensors; and "WHEREAS, the Licensee is desirous of obtaining a license to manufacture and sell certain types of rhodium plating electrolytes and to employ and to permit their customers to employ certain processes of the Licensor coming within the scope of the Licensors patents and the pending applications for Letters Patent above mentioned. "NOW, THEREFORE, the parties hereto have agreed and by these presents do agree with each other as follows: - "I. "RHODIUM PHOSPHATE LICENSE. "Subject to the conditions mentioned in Paragraphs four (4) to nineteen (19) inclusive, and in consideration of the assignment of the whole right, title and interest in a certain application for Letters Patent now pending in the United States Patent Office bearing the title *71 of 'Process for the Electrolytic Deposition of Rhodium and to a Bath for Effecting Said Deposition' and bearing Serial No. 526,786 and the transference of these rights by the Licensee to the Licensor as per Articles of Assignment dated May thirty-first (31st), 1934, the Licensor grants to the Licensee and/or his son, Adolph Cohn, an irrevocable, non-exclusive and non-assignable license to employ the process and to manufacture and sell Rhodium Plating Solutions coming within the scope of the Licensor's U.S. Patent #1,947,180 and Canadian Patent #340,067 as well as the said applications for Letters Patent entitled 'Process for the Electrolytic Deposition of Rhodium and to a Bath for Effecting Said Deposition' bearing Serial No. 526,786, and/or the corresponding application of the Licensor now pending in the U.S. Patent Office within the territory of the United States of America and the Dominon of Canada. "II. "RHODIUM SULPHATE LICENSE. "The Licensor grants to the Licensee and/or his son, Adolph Cohn, a non-exclusive, non-assignable license to employ the inventions of the Licensor relating to rhodium plating and to manufacture and sell any of the rhodium plating electrolytes that *72 come within the scope of the United States Patents and the Dominion of Canada Patents owned by the Licensor including U.S. Patents 1,949,131 - 1,779,457 - 1,779,436 - 1,947,180 and Canadian Patents 340,067 - 321,912 - 305,841 - 305,840 within the territory of the United States of America and the Dominion of Canada. * * * "III. "(B) - That the Licensee will use only the processes, products and methods of manufacture that are sanctioned by this license agreement and will introduce no change of his own unless such change has the written approval of the Licensor. * * *
"IV. "The Licensee agrees to purchase not less than ninety (90%) of the rhodium needed for his rhodium plating requirements from the Licensor and the Licensor undertakes to supply not less than ninety percent (90%) of the rhodium needed for the Licensees rhodium plating requirements throughout the life of this agreement subject to the understanding that the purchase price of the rhodium is to be in accordance with market conditions prevailing at the time of each individual purchase and, further provided that the price offered by the Licensor is at least as favorable as any outside offer from a reliable source *73 that is tendered to the Licensee on the same day, for prompt delivery and that is definitely based on a quantity and quality of rhodium equal in all respects to the offering of the Licensor. * * *
"VII. "The Licensee agrees to pay a certain royalty, or license fee, to the Licensor at fixed intervals and throughout the life of this agreement on all Rhodium Plating Salts, Solutions and Replenishing Solutions coming within the scope of this agreement that are sold, supplied or consumed by the Licensee. * * * "VIII. "The amount of the royalty is to be ten percent (10%) of the Licensee's selling price as long as the selling price yields a NET QUARTERLY AVERAGE RETURN of One Dollar ($1.00) or more per gram of rhodium as provided in Paragraph VI, but should the NET QUARTERLY AVERAGE RETURN fall below One Dollar ($1.00) per gram of rhodium the royalty will then be reduced from ten percent (10%) to seven and one-half percent (7 1/2%) of the selling price and the lower royalty of seven and one-half percent (7 1/2%) will continue in effect as long as the NET QUARTERLY AVERAGE RETURN is less than One Dollar ($1.00) per gram of rhodium. * * * "X. "The Licensee acknowledges receipt *74 of a letter from the Licensor bearing date of May thirty-first (31st), 1934 and giving the names of certain other Licensees who have contracted with the Licensor to use the Licensor's Rhodium Plating Process with the privilege of employing the use of any patents that relate to Rhodium Plating and that have been granted or may in the future be granted to the Licensor. "XI. "The Licensee is aware that each and everyone of these other Licensees is under contract to purchase all of their Rhodium Plating requirements from the Licensor and that they have paid a substantial license fee to the Licensor in consideration of which the Licensor has agreed to supply all of their Rhodium requirements for a minimum period of fifteen (15) years at a preferential price equivalent to the most favorable trade price (which shall hereafter be referred to as the "BASE PRICE") less a discount of ten percent (10%)." Baker licensed the petitioner's patent, #1,947,180, to Sigmund Cohn in the above mentioned agreement, as if it owned the patent. Baker also licensed many jewelers in all parts of the United States to "rhodanize" (make tarnish resistant) silver articles. The gross income of the petitioner *75 for the years in question and the items making up these amounts were as follows.. Royalties
Other Receipts
Year
Gross Income
Dividends
from Baker
from Baker
1934
$ 8,515.76
$ 316.50
$ 657.84
$ 7,541.42
1936
12,597.32
1,410.00
1,689.91
9,497.41
1941
16,550.58
1,840.00
1,394.30
13,316.28
1942
18,801.61
1,860.00
797.49
16,144.12
1943
13,651.15
1,850.00
803.16
10,997.99
1944
7,699.41
1,490.00
573.31
5,635.90
1945
11,944.31
1,580.00
1,227.02
9,137.29
1946
13,395.55
1,610.00
2,879.55
8,906.00
1947
17,730.73
1,770.00
2,339.04
13,621.69
1948
18,546.97
1,835.00
2,101.59
14,610.36
1949
21,048.39
2,025.00
2,449.75
16,573.64
Baker's principal patents were #1,949,131 and #1,981,820. The former was applied for November 14, 1932, it was issued February 27, 1934 and it expired February 27, 1951. Among other things it claimed: "A rhodium plating solution adapted to produce a bright, lustrous plating on a noble metal, containing 5 to 20 grams of rhodium sulphate per liter of water and a mineral acid." The latter was applied for on August 27, 1931, it was issued November 20, 1934 and it expired November 20, 1951. Among *76 other things it claimed: "An electrolyte for depositing rhodium, which includes, a rhodium phosphate compound in a dilute sulphuric acid solution." The petitioner's patents, #1,837,193 and #1,947,180, expired on December 22, 1948 and February 13, 1951, respectively, but it continued to receive payments from Baker until it was dissolved. The petitioner's income, excess profits, and declared value excess-profits tax returns for the years involved were prepared by an employee of Baker. On the income tax returns filed the petitioner answered "no" to the question whether it was a personal holding company, and reported the receipts from Baker as "commissions earned." The petitioner's failure to file personal holding company returns for the years in question was not due to reasonable cause and was due to willful neglect. Opinion TIETJENS, Judge: Under the applicable provisions of the Internal Revenue Code of 1939, the petitioner is to be considered a personal holding company if 80 per centum of its gross income for the taxable year was personal holding company income, and if at any time during the last half of the taxable year more than 50 per centum in value of its outstanding *77 stock was owned, directly or indirectly, by or for not more than five individuals. The parties have stipulated the stock ownership phase of the question and we are concerned here only with whether 80 per cent or more of the petitioner's income was personal holding company income. In this respect the petition filed herein alleges that "1. The Commissioner erred in establishing that the petitioner was a Personal Holding Company by asserting that commissions earned by the petitioner were royalties." The petitioner has the burden of establishing error in the Commissioner's determination. If the payments made by Baker to the petitioner were royalties, then by statutory definition, they are to be included in computing personal holding company income. Sec. 502, Internal Revenue Code of 1939. The petitioner argues that the payments were not royalties, but were commissions based on the sales made by Baker of its plating solutions. We do not think this gets the petitioner very far. The true nature of the payments does not depend upon the nomenclature utilized by the petitioner in describing them. A so-called "commission" may yet be a royalty. See Kiesau Petroleum Corp., 42 B.T.A. 69. *78 There is no evidence of record to explain why Baker should be paying "commissions" to the petitioner. Petitioner had no employees during the taxable years. It performed no services for Baker or for anyone else. There was no written contract between the petitioner and Baker regarding the payments and if there was any oral agreement, its terms are not disclosed by the evidence. In other words, the record contains nothing other than that the petitioner used the term "commissions" in describing the payments in certain memoranda and in its tax returns, to support the petitioner's contention that the payments were in fact "commissions" rather than royalties. And even this is weakened by the petitioner's concession that at least a portion of the payments were royalties though originally recorded as commissions. On the other hand, the record tends more to support the Commissioner's determination than the petitioner's contention. The petitioner did at one time own certain patents related to making silver articles tarnish resistant. These patents appear to have been the only property owned by the petitioner after it ceased operations. At least one of them turned up in Baker's hands, whether *79 by sale or license is not shown. Baker licensed Cohn and many others to use its "rhodanizing" process and to manufacture and sell its rhodium solutions. Among the patents enumerated in these licensing agreements was one patent which had been owned by the petitioner. The consideration for the agreements were certain royalties and promises to purchase from Baker all rhodium, or a certain percentage thereof, required by the licensees in their plating operations. Baker paid over to the petitioner in the taxable amounts equalling four per cent of Baker's sales of rhodium and palladium salts and solutions under an arrangement whose terms (other than the fact of the payments themselves and their amounts) are undisclosed. In the circumstances we are compelled to hold that the petitioner has not carried its burden of demonstrating error in the Commissioner's action in determining that the payments it received from Baker were royalties and thus personal holding company income. With reference to the second issue, the Commissioner determined additions to the tax of 25 per cent for failure to file personal holding company returns for the years in question. Under the Revenue Act of 1934 the *80 addition is mandatory for the year 1934, regardless of whether the petitioner's failure to file was due to reasonable cause and was not due to willful neglect. Commissioner v. Lane-Wells Co., 321 U.S. 219 (1944). For the other years the petitioner may avoid the addition if it can show that its failure to file was due to reasonable cause and was not due to willful neglect. The petitioner relies on the fact that when its income tax returns for 1939-1941 were examined by an internal revenue agent it was not informed by such agent that it might be a personal holding company. Also that the public accounting firm which represented it throughout such examination did not advise petitioner that it might be a personal holding company. The fact that the revenue agent did not suggest that the petitioner might be a personal holding company is immaterial, especially since the petitioner reported its royalties as commissions and also reported that it was not a personal holding company, and thus did not make an accurate disclosure of its personal holding company status on its tax returns. The accounting firm represented the petitioner only when its returns were examined for the years *81 1939-1941. It did not prepare the income tax returns and the petitioner has not shown that all the facts concerning personal holding company status were communicated to the firm and its opinion requested. Nor is there any indication that any other public accountant or an attorney was ever consulted in the preparation of the petitioner's returns. In fact petitioner's returns for the years 1934, 1936 and 1941 through 1949 all stated that no such assistance was received. And Baker's accountant, whose responsibility it was to prepare the tax returns, testified that he never considered the question whether the petitioner was a personal holding company even though he was familiar with the general principles of personal holding companies. The petitioner has not shown that its failure to file personal holding company returns for the years in question was due to reasonable cause and was not due to willful neglect. See Tarbox Corporation, 6 T.C. 35 (1946). The additions to tax were properly determined. Decision will be entered for the respondent.